## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO. 24-105** |
| **RYAN J. HARRIS, ET AL.** | **SECTION: D (1)**<br>**This Order applies to**<br>**all defendants except**<br>**for Ryan Harris and**<br>**Jovanna R. Gardner** |

### ORDER AND REASONS

Before the Court is the Government's Motion for Rule 15 Deposition.[1]

Defendants, Jason Giles and the King Firm, LLC, oppose the Motion,[2] and the

Government has filed a Reply.[3] With leave of Court, Giles and the King Firm filed a

Surreply brief into the record under seal.[4] On October 27, 2025, Vanessa Motta and

Motta Law, LLC filed an out-of-time Supplemental Memorandum Concerning R.

Docs. 407 and 428.[5] The Court heard oral arguments on the Motion on November 20,

2025.[6]

---

[1] R. Doc. 407.
[2] R. Doc. 428.
[3] R. Doc. 435.
[4] R. Doc. 461.
[5] R. Doc. 455. On September 25, 2025, the Court issued an Order granting an Unopposed Motion for Additional Time to Respond to the Government's Memorandum in Support of Rule 15 Deposition (Rec. Doc. 407), filed by Giles and the King Firm (R. Doc. 418), and the Court set an October 6, 2025 deadline "for filing an opposition to the Government's Motion for Rule 15 Deposition (R. Doc. 407) . . . ." R. Doc. 419. The Motta Defendants filed their "Supplemental Memorandum" on October 27, 2025. R. Doc. 455.
[6] R. Doc. 479.

After careful consideration of the parties' memoranda, oral arguments, and the applicable law, for the reasons stated during the oral argument, the Motion is **GRANTED.**

## I.    FACTUAL AND PROCEDURAL BACKGROUND[7]

This case involves allegations of a years-long scheme by over a dozen individuals to stage fake automobile collisions in the New Orleans metropolitan area and file fraudulent insurance claims and fraudulent lawsuits based on the staged collisions.[8]  In count one of the second superseding indictment, the Government charges Sean D. Alfortish, Vanessa Motta, Motta Law, LLC ("Motta Law"), Jason F. Giles, The King Firm, LLC (the "King Firm"), Leon M. Parker, Diaminike F. Stalbert, Carl G. Morgan, and Timara N. Lawrence with conspiracy to commit mail and wire fraud based upon the fake automobile collision scheme.[9]  In setting forth the manner and means of the conspiracy alleged in count one, the Government identifies the "slammers" used by Giles and the King Firm who were paid to stage collisions.[10]  The Government alleges that from approximately 2011 to 2017, Damian Labeaud and Roderick Hickman staged numerous collisions for Giles and the King Firm, working as spotters and slammers, but also as "runners" who referred individuals involved in automobile accidents to Giles and the King Firm for money.[11]  The Government alleges that Giles and the King Firm knew that Labeaud and Hickman were staging

---

[7] In the interest of judicial economy, and because the factual and procedural history of this case were set out in great detail in the Court's July 25, 2025 Order and Reasons (R. Doc. 357), the Court will limit its recitation of the factual and procedural background to matters relevant to the instant Motion.
[8] *See* R. Docs. 1, 78, & 256.
[9] R. Doc. 256 at pp. 2–16.
[10] *Id.* at pp. 7–16.
[11] *Id.* at pp. 3 & 7–10.

automobile collisions,[12] and that Giles and the King Firm filed fraudulent lawsuits based on the staged collisions.[13]   The Government also alleges that Cornelius Garrison was a slammer who staged collisions for Giles, the King Firm, Alfortish, Motta, Motta Law, and others.[14]   The Government alleges that from approximately 2015 to 2017, Garrison and Slammer H staged collisions for Giles and the King Firm.[15]

In the instant Motion, the Government asks this Court to order the deposition of Ernest Castle pursuant to Federal Rule of Criminal Procedure 15.[16]   The Government asserts that Castle was a "runner" for the King Firm and that he will provide important testimony about the King Firm, Giles, and staged collisions.[17]   The Government claims that Castle has Stage IV lung cancer that has metastasized to his spine and brain, and that he receives immunotherapy with palliative intent.[18] The Government points out that under Rule 15, the Court may allow a party to depose a prospective witness to preserve testimony for trial based upon "exceptional circumstances" and "in the interest of justice."[19] The Government claims that a Rule 15 deposition is appropriate when there is a substantial likelihood that the witness will be unavailable for trial because of death, a then-existing infirmity, physical

---

[12] *Id.* at p. 8, ¶ 9.
[13] *Id.* at pp. 9–10.
[14] *Id.* at p. 6, ¶ 21.
[15] *Id.* at p. 12, ¶ 21.
[16] R. Doc. 407-3 at p. 1.
[17] *Id.*
[18] *Id.*
[19] *Id.* (*quoting* Fed. R. Crim. P. 15(a)) (citation modified).

illness, or mental illness.[20]  The Government asserts that while Castle is only 53 years old, his Stage IV lung cancer raises the substantial likelihood that he will be unavailable to testify at the March 2, 2026 trial.[21]  The Government submitted a letter from Castle's oncologist, explaining that his cancer "is a life-threatening diagnosis, and the goal of treatment is life prolongation."[22]  The Government points out that the oncologist states in his letter that for patients undergoing Castle's treatment, the estimated proportion who were alive after twelve months was 69.2 percent.[23]  The Government also points out that the oncologist states that, "survival is variable and depends on several factors, including performance status, the extent and pattern of metastatic disease, and response to treatment."[24]  The Government claims that it is concerned Castle may pass away before he is able to testify at the upcoming trial, or that his condition may deteriorate such that he is unable to travel to the courthouse, take the stand, and testify, potentially for hours.[25]

The Government further asserts that Castle's testimony is material because he is anticipated to testify that: (1) while he was not a slammer, he brought cases to Giles and the King Firm in exchange for payment; (2) slammer Irvin Hatcher staged collisions and sold them to Giles and the King Firm; (3) Hatcher also purchased staged collisions from Garrison, a slammer, and then sold them to law firms; and (4)

---

[20] R. Doc. 407-3 at p. 3 (citing *United States v. Campbell*, 845 F.2d 1374, 1377–78 (6th Cir. 1988); *United States v. Keithan*, 751 F.2d 9, 12 (1st Cir. 1984); *United States v. Wooden*, Crim. A. No. 16-20038-24-CR-LENARD/GOODMAN, 2016 WL 4586041, at *3 (S.D. Fla. Aug. 25, 2016) (Goodman, M.J.)).

[21] R. Doc. 407-3 at p. 3.

[22] *Id.* (*citing* R. Doc. 407-4; *quoting* R. Doc. 407-5) (citation modified).

[23] R. Doc. 407-3 at pp. 3–4 (*citing* R. Doc. 407-5).

[24] R. Doc. 407-3 at p. 4 (*quoting* R. Doc. 407-5) (citation modified).

[25] R. Doc. 407-3 at p. 4.

Giles and the King Firm must have known that the cases Hatcher sold them were staged.[26] To support its position, the Government points to FBI agent summaries of interviews with Castle that it previously provided to the defense and the Court as part of the litigation related to the motions to sever that were previously filed by several defendants.[27] The Government argues that Castle's anticipated testimony speaks to a central issue in this case – whether Giles and the King Firm knew the collisions they bought were staged and, by extension, their intent to defraud.[28] As such, the Government asserts that Castle's testimony is material under Rule 15.[29]

Giles and the King Firm oppose the Motion, claiming that they should be provided equal access to Castle's medical records and provided immediate access to discovery that will ensure their right to confront the witness.[30] Giles and the King Firm claim that the Medical Release signed by Castle only allows the Department of Justice to contact his doctors, placing the defense at a disadvantage to discover his medical condition.[31] Giles and the King Firm assert that they have asked the Government to obtain a full release from Castle to allow them to obtain his medical records, and that they should be given an opportunity to review Castle's medical records since his medical condition is the basis for Government's request for a Rule 15 deposition.[32] Giles and the King Firm aver that the oncologist who provided the medical opinion submitted by the Government does not reference himself as a

---

[26] *Id*.
[27] *Id*. *See* R. Docs. 311-4. 311-5, & 311-6.
[28] R. Doc. 407-3 at p. 4.
[29] *Id*. (citing *United States v. Gasana*, 744 F. Supp. 3d 149, 155 (D.N.H. 2024)).
[30] R. Doc. 428 at p. 1.
[31] *Id*.
[32] *Id*. at p. 2.

treating physician or provide information regarding the medical records he reviewed to provide his opinion.[33]

Giles and the King Firm also raise their Sixth Amendment right to confront Castle.[34]  Giles and the King Firm assert that "the FBI 302s of Mr. Castle"[35] show that Castle is one of the primary witnesses against Giles and the King Firm, but they are unaware what exhibits the Government seeks to introduce through Castle.[36] Giles and the King Firm claim that they also do not know if Castle has, or was offered, a non-prosecution agreement, or if his statements to the FBI were induced by the Government telling him that he would not be arrested or imprisoned.[37]  Giles and the King Firm contend that this information is vital to effectively evaluating and cross-examining Castle's testimony, and that they are at "an extreme disadvantage" in preparing for the Rule 15 deposition without it.[38]  While Giles and the King Firm do not appear to challenge the Government's position that Castle's health constitutes "exceptional circumstances" under Rule 15(a)(1), they seem to assert that the Government must also show that the deposition would be "in the interest of justice" and afford them the right to a meaningful confrontation of the witness.[39]  Giles and

---

[33] *Id*.  The Court notes that the letter submitted by the Government was from Mark D. Sides, M.D., Ph.D., Director, Thoracic Oncology Program, Assistant Professor of Clinical Medicine, Deming Department of Internal Medicine, Section of Hematology and Oncology, Tulane University School of Medicine.  R. Doc. 407-5 at p. 2.

[34] R. Doc. 428 at pp. 2–3.

[35] The FD-302 is the form used by FBI agents to memorialize their notes taken during an interview with a witness.  The "302 statements" referenced by Giles and the King Firm refer to statements made by Castle during such FBI interviews.

[36] R. Doc. 428 at p. 2.

[37] *Id*. at pp. 2–3.

[38] *Id*. at p. 3.

[39] *Id*.

the King Firm point out that Rule 15(e) provides that, "the scope and manner of the deposition, examination and <u>cross examination</u> must be the <u>same as</u> would be allowed during the <u>trial</u>."[40]  As such, Giles and the King Firm request that any order granting the Government's Motion and requiring the Rule 15 deposition of Castle also provide for the immediate production of the following:

(1) all Government exhibits to be used at the deposition;

(2) the FBI 302 statements of all witnesses referenced in the 12 pages of Castle's FBI 302 statements or other statements by Castle and any other data related to Castle, including the references to Cornelius Garrison, Chad Johnson, Aretha Davis, Damian Labeaud, Ryan Harris, Baby Kaitlyn, Kenny Lnu, Kevin Burton, Corey Davis Kawhight, Ray Charles, John Norris, Michael Simonson, and Sean Regan;

(3) a proffer of any additional information, beyond the information contained in Castle's statements, that the Government intends to enter through Castle's testimony;

(4) any and all plea agreements with Castle, including but not limited to a non-prosecution agreement, including any informal non-prosecution agreement or tacit agreement to withhold any government actions against Castle due to his illness;

(5) all FBI 302 statements or any other memoranda prepared by any government officials as a result of the most recent contact with Castle referenced in the Government's Motion;

(6) the name of any experts who will be utilizing Castle's testimony as a basis for their expert opinion;

(7) any Fed. R. Evid. 404(b) evidence that will be based on Castle's testimony; and

(8) any additional information that would expedite the defense's preparation for the Rule 15 deposition.[41]

---

[40] *Id*. (emphasis added by Giles and the King Firm).
[41] *Id*. at pp. 4–5.

Giles and the King Firm claim that they requested the above information on September 17, 2025, and that the Government responded that it will provide bates numbers for exhibits to be used and that it intends to comply with all discovery, constitutional, and Rule 15 obligations, but did not provide a timeframe for doing so.[42] Finally, Giles and the King Firm "reserve all rights to argue the inadmissibility of the Rule 15 Deposition at trial."[43]

In response, the Government asserts that it has established a substantial likelihood that Castle will be unavailable for the March 2, 2026 trial and that his testimony will be material.[44]  The Government contends that it has demonstrated a substantial likelihood of Castle's unavailability based upon the letter from Castle's physician, which Giles and the King Firm do not contest.[45]  The Government questions what Giles and the King Firm hope to accomplish by obtaining volumes of Castle's medical records, or why their expert would disagree with the Director of Thoracic Oncology at the Tulane University School of Medicine, whom the Government believes is treating Castle.[46]  The Government further claims that Giles and the King Firm have access to the same medical files as the Government because Castle was a client at the King Firm who received medical treatment as part of his personal injury case, and the King Firm maintained his medical information as part of his case file.[47]  The Government asserts that this information was produced by the

---

[42] *Id*. at p. 5.
[43] *Id*. (citing *United States v. Drogoul*, 1 F.3d 1546 (11 Cir. 1993)).
[44] R. Doc. 435 at p. 1 (citing *United States v. Gasana*, 744 F. Supp. 3d 149, 153–55 (D.N.H. 2024)).
[45] R. Doc. 435 at pp. 1–2 (*citing* R. Doc. 407-5).
[46] R. Doc. 435 at p. 2.
[47] *Id*.

King Firm to the Government in response to a grand jury subpoena, that the Government produced it to the King Firm as part of bates-stamped discovery in this case, and that the Government has not sought any additional medical records regarding Castle's cancer diagnosis beyond the letter from Castle's doctor.[48]   The Government further asserts that it has shown that Castle's testimony is material, and that Giles and the King Firm concede that Castle has provided extensive information about their involvement with the staged collision scheme and will be an important witness against them.[49]   As such, the Government claims it has satisfied both requirements of Rule 15(a) and that its Motion should be granted.

The Government further asserts that, to the extent Giles and the King Firm complain that the Government has not produced other materials prior to the Scheduling Order deadlines, producing these materials before the Court grants the Motion would be premature.[50]   The Government claims that if the Motion is granted, it will timely direct Giles and the King Firm to the bates numbers of documents it intends to use as exhibits during Castle's deposition and that it will comply with its constitutional and discovery obligations as it would if Castle were testifying at trial.[51]   The Government asserts that Giles and the King Firm's request for the Court to issue a separate scheduling order cataloguing the various materials the Government must

---

[48] *Id*.
[49] *Id*. at pp. 2–3 (*citing* R. Doc. 428 at pp. 2–5).
[50] R. Doc. 435 at p. 3.
[51] *Id*. (*citing* Fed. R. Crim. P. 15(e)(2)).

produce in advance of Castle's deposition should be denied, as many of the requests go beyond what they would be entitled to if Castle testified at trial.[52]

In a sealed Surreply brief, Giles and the King Firm for the first time question whether the Government has shown that Castle will be unavailable for trial and assert that, "[m]ateriality is not conceded."[53] Giles and the King Firm clarify that they are only seeking Castle's most recent medical records "which allegedly include Castle's terminal diagnosis and are signed by Castle's treating physician."[54] Giles and the King Firm claim that the medical records they have from their prior representation of Castle are from a personal injury lawsuit filed several years ago and do not include records related to Castle's current illness.[55] Giles and the King Firm further assert that Castle's FBI 302 statements contain hearsay references to unidentified government witnesses from whom they have not had any discovery, and fail to identify Castle's involvement or personal knowledge of any accident related to the indictment.[56] Giles and the King Firm claim that Castle "appears to be a covert effort by the Government to link the Garrison conspiracy to Jason Giles and The King Firm, as they lack other evidence."[57] Giles and the King Firm assert that they will contest the materiality of Castle's testimony until more discovery, including an exhibit list, has been provided by the Government.[58] Giles and the King Firm argue that the Court could deny the Government's Motion because the FBI 302 statements

---

[52] R. Doc. 435 at p. 3.
[53] R. Doc. 461 at pp. 1–2.
[54] *Id*. at pp. 1 & 2.
[55] *Id*. at p. 2.
[56] *Id*. at pp. 2–3.
[57] *Id*. at p. 3.
[58] *Id*.

show that Castle's testimony will contain hearsay and, therefore, will be inadmissible at trial.[59]  If, however, the Court grants the Government's Motion, Giles and the King Firm maintain their request for early discovery of the documents listed in their Opposition brief, including documents related to other witnesses who will testify for the Government, to protect their Sixth Amendment right to effectively cross-examine Castle.[60]

Defendants, Vanessa Motta and the Motta Law (collectively, the "Motta Defendants"), filed an untimely "Supplemental Memorandum Concerning R. Docs. 407 & 428" on October 27, 2025, a mere three days before the October 30, 2025 hearing on the Government's Motion.[61]  The Motta Defendants do not oppose the Government's Motion, but in the event that the Court grants the Motion, they support the request for production of documents by Giles and the King Firm set forth in their Opposition brief.[62]  The Motta Defendants assert that Fed. R. Crim. P. 15(e)(3) requires the Government to provide to the defendants limited discovery material, including any statement of the deponent in the Government's possession to which the defendants would be entitled at trial.[63]  The Motta Defendants claim that the Government should also be required to produce all *Brady* and *Giglio* material that it

---

[59] *Id*. at pp. 3–4 (citing *United States v. Drogoul*, 1 F.3d 1546, 1555 (11th Cir. 1993)).
[60] R. Doc. 461 at p. 4.
[61] R. Doc. 455.  The Court notes that the hearing was subsequently cancelled on October 29, 2025, to be rescheduled for a later date.  *See* R. Doc. 462.
[62] R. Doc. 455 at p. 1 (*citing* R. Doc. 428 at p. 4).
[63] R. Doc. 455 at pp. 1–2 (citing *United States v. Sabhnani*, Crim. A. No. 07-cr-429 (ADS) (WDW), 2007 WL 2908105, at *2 (E.D.N.Y. Oct. 5, 2007) (Spatt, J.)).

would have been required to produce by February 9, 2026,[64] since it could contain information necessary for a complete and thorough examination of Castle.[65]

During oral argument, counsel for the parties addressed the materiality of Castle's testimony, whether he will be unavailable at the time of trial, and the scope of discovery sought by Giles and the King Firm.

## II.    LEGAL STANDARD

Federal Rule of Criminal Procedure 15(a)(1) provides that, "[a] party may move that a prospective witness be deposed in order to preserve testimony for trial.  The court may grant the motion because of exceptional circumstances and in the interest of justice."[66]  Rule 15(a)(1) further provides that, "[i]f the court orders the deposition to be taken, it may also require the deponent to produce at the deposition any designated material that is not privileged, including any book, paper, document, record, recording, or data."[67]  Rule 15(e) specifies that a deposition taken pursuant to Rule 15 "must be taken and filed in the same manner as a deposition in a civil action," except that the scope and manner of the deposition examination and cross-examination must be the same as would be allowed during trial and the government must provide to the defendant or the defendant's attorney, for use at the deposition, any statement of the deponent in the government's possession to which the defendant would be entitled at trial.[68]  Importantly, "[a]n order authorizing a deposition to be

---

[64] February 9, 2026 is the deadline set forth in the Scheduling Order for the Government to produce *Brady* and Jencks Act materials.  *See* R. Doc. 405 at p. 2.
[65] R. Doc. 455 at pp. 2–3.
[66] Fed. R. Crim. P. 15(a)(1).
[67] *Id.*
[68] Fed. R. Crim. P. 15(e).

taken under this rule does not determine its admissibility.  A party may use all or part of a deposition as provided by the Federal Rules of Evidence."[69]

The Fifth Circuit has held that, "[t]he district court retains broad discretion in granting a Rule 15(a) motion, and considers the particular characteristics of each case to determine whether the 'exceptional circumstances' requirement has been satisfied." [70]  The Fifth Circuit has explained that, "[t]he words 'exceptional circumstances' bespeak that only in extraordinary cases will depositions be compelled."[71]  The Fifth Circuit has recognized that "extraordinary circumstances" include situations where a potential deponent would not likely be able to return to the United States. [72]  Other Circuits, however, have held that "extraordinary circumstances" also include situations where a witness whose physical condition, including advanced age and physical infirmities, generates a substantial likelihood that he or she would be unable to appear as a live trial witness.[73]  At least two other Circuits have held that the moving party need not show conclusively that the prospective deponent will be unavailable at trial.[74]  Those courts have recognized, however, that, "[a] more concrete showing of unavailability, of course, may be required at the time of trial before a deposition will be admitted in evidence."[75]

---

[69] Fed. R. Crim. P. 15(f).

[70] *United States v. Farfan-Carreon*, 935 F.2d 678, 679 (5th Cir. 1991) (citing *United States v. Bello*, 532 F.2d 422, 423 (5th Cir. 1976)).

[71] *United States v. Lucas*, 516 F.3d 316, 348 (5th Cir. 2008) (quoting *United States v. Dillman*, 15 F.3d 384, 389 (5th Cir. 1994)) (citation modified).

[72] *Lucas*, 526 F.3d at 348 (citing *Dillman*, 15 F.3d at 389).

[73] *United States v. Drogoul*, 1 F.3d 1546, 1553 (11th Cir. 1993); *United States v. Keithan*, 751 F.2d 9, 12 (1st Cir. 1984).

[74] *Drogoul*, 1 F.3d at 1553 (citing *United States v. Sines*, 761 F.2d 1434, 1439 (9th Cir. 1985)).

[75] *Drogoul*, 1 F.3d at 1553 (*citing* Fed. R. Crim. P. 15(e)).

According to the Eleventh Circuit, "[a] potential witness is unavailable for purposes of Rule 15(a), however, whenever a substantial likelihood exists that the proposed deponent will not testify at trial."[76]

The Fifth Circuit has further recognized that, "[a]lthough . . . the textual words of Rule 15 do not expressly require 'materiality,' it is emphatically clear to us that the words 'in the interest of justice' call for the deposition to offer evidence that is material."[77] An Advisory Committee Note to Rule 15 likewise states that a court may grant a Rule 15 motion "if it appears that (a) the prospective witness will be unable to attend or be prevented from attending the trial, (b) the prospective witness' testimony is material, and (c) the prospective witness' testimony is necessary to prevent a failure of justice."[78]

## III.    ANALYSIS

As the Government correctly points out, in their Opposition brief Giles and the King Firm did not challenge the Government's assertion that there is a substantial likelihood that Castle will be unavailable to testify at the March 2, 2026 trial, or that Castle's testimony would be material to the Government's case against Giles and the King Firm with respect to the staged automobile collisions. In their Surreply brief, however, Giles and the King Firm question whether Castle is likely to be unavailable to testify at trial and contest the materiality of his testimony, at least until they can

---

[76] *Dorgoul*, 1 F.3d at 1553.
[77] *Dillman*, 15 F.3d at 389 (citing *Drogoul*, 1 F.3d at 1552); *United States v. Ontiveros–Lucero*, 621 F. Supp. 1037, 1038 (W.D. Tex. 1985), *aff'd*, 790 F.2d 891 (5th Cir. 1986)).
[78] Fed. R. Crim. P. 15 advisory committee's note, 1975 Enactment.

obtain Castle's medical records reflecting his current condition and receive additional discovery materials from the Government.

Based upon the evidence provided by the Government, namely the letter from Dr. Mark D. Sides and Castle's FBI 302 statements, the Court finds that the Government has met its burden of proving that there is a substantial likelihood that Castle will be unavailable for the March 2, 2026 trial on the staged automobile collisions and that Castle's testimony will be material to that case. The Court finds that the Government has made a strong showing of materiality based upon Castle's FBI 302 statements, which address a central issue in this case – whether Giles and the King Firm knew the collisions they bought were staged and, by extension, their intent to defraud. Specifically, the FBI 302 statements suggest that Castle was a "runner" who was paid by Giles to bring car accidents to the King Firm.[79] While Castle stated that he did not stage fraudulent accidents,[80] he claims that Irving Hatcher, "Baby Kaitlin," Damian Labeaud, and Cornelius Garrison staged accidents for the King Firm.[81] Castle also stated that Giles and other attorneys at the King Firm knew that the accidents were fraudulent.[82] As such, the Court finds that exceptional circumstances exist to allow the Rule 15 deposition of Castle, which would also be in the interest of justice.

To the extent that Giles and the King Firm request that the Court require the immediate production of eight categories of information and documents in the event

---

[79] R. Doc. 311-4 at p. 1; R. Doc. 311-5 at p. 1.; R. Doc. 311-6 at pp. 1–3.
[80] *See* R. Doc. 311-4 at p. 1; R. Doc. 344-6 at pp. 3–4.
[81] R. Doc. 311-4 at p. 2; R. Doc. 311-5 at pp. 1–3; R. Doc. 311-6 at pp. 1 & 3.
[82] R. Doc. 311-4 at pp. 1 & 2; R. Doc. 311-5 at p. 3; R. Doc. 311-6 at pp. 2–3.

that the Government's Motion is granted,[83] the Government has represented to the Court that it will timely direct Giles and the King Firm to the bates numbers of documents that it intends to use as exhibits during Castle's deposition, and that it will comply with its constitutional and discovery obligations as it would if Castle were testifying at trial.[84]  During oral argument, the Government advised that it will provide defense counsel with an exhibit list and a copy of the documents that the Government intends to question Castle about during the deposition, as well as any Jencks Act materials under 18 U.S.C. § 3500, one week before the scheduled deposition.  With respect to other documents requested, such as certain FBI 302 statements from interviews with other individuals referenced in Castle's FBI 302 statements, the Government correctly points out that the Fifth Circuit has held that, "such 'statements' by witnesses actually consist of interview notes taken by government agents.  These are the so-called '302' reports.  Such notes, if not 'substantially verbatim reports', are not 'statements' covered by the Jencks Act disclosure requirements."[85]

Notably, Giles and the King Firm do not cite any legal authority to support their request for the production of the documents listed in their Opposition brief.[86] The Court finds that Giles and the King Firm are not entitled to the production of the FBI 302 statements of all witnesses referenced in Castle's FBI 302 statements, "any

---

[83] *See* R. Doc. 428 at pp. 4–5.
[84] R. Doc. 435 at p. 3 (*citing* Fed. R. Crim. P. 15(e)(2)).
[85] *United States v. Edwards*, 702 F.2d 529, 531 (5th Cir. 1983) (quoting *United States v. Cole*, 634 F.2d 866, 867 (5th Cir. 1981)).
[86] *See, generally*, R. Doc. 428.

additional information . . . which the Government intends to enter through Castle's testimony," any plea agreements with Castle, FBI 302 statements or other memoranda prepared by government officials as a result of the Government's most recent contact with Castle, the name of any experts who will use Castle's testimony as a basis for their expert opinion, "[a]ny 404(b) evidence which will be based on Castle's testimony," or "[a]ny additional information which would expedite the defenses' preparation for the early Rule 15 deposition months before the trial."[87]

## IV.    CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that the Government's Motion for Rule 15 Deposition[88] is **GRANTED.  IT IS FURTHER ORDERED** that the Government shall provide to defense counsel the following information **one week** before the scheduled deposition of Ernest Castle: (1) an exhibit list for the deposition; (2) a copy of any documents that the Government intends to question Castle about during the deposition; and (3) any Jencks Act materials as to Castle under 18 U.S.C. § 3500.

New Orleans, Louisiana, November 21, 2025.

**WENDY B. VITTER**
**United States District Judge**

---

[87] R. Doc. 428 at pp. 4–5.
[88] R. Doc. 407.