UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO.  24-105** |
| **v.** | * | **SECTION:  "D"(1)** |
| **RYAN HARRIS,** *et al.* | * | **(Counts 1 through 13)** |

\* \* \*

### GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO EXCLUDE EXHIBITS OR, ALTERNATIVELY, MOTION TO CONTINUE HEARING

The United States of America, through the undersigned attorneys, hereby opposes the Motion to Exclude Exhibits, or, Alternatively, Motion to Continue Hearing filed by defendants Sean D. Alfortish, Vanessa Motta, Motta Law, LLC, and Leon M. Parker. *See* Rec. Doc. 492.

The defendants accuse the government of "weaponized timing," an "intentional ambush," and "dilatory conduct (at best) or gamesmanship (at worst)." These attacks on the professionalism of the government's counsel are unfounded and disappointing. The government has bent over backwards to help the defendants review evidence and better understand the charges against them. The government has offered to assist the defendants with locating documents within the discovery, and it has offered to explain the evidence during reverse-proffers—resulting in recent reverse-proffers with counsel for Alfortish and Parker that covered much of the same evidence that they now seek to exclude.

The government has maintained since it filed its original motion that the Court has sufficient documentary evidence and reports of interviews to rule on the issue of whether the forfeiture-by-wrongdoing exception applies. The defendants were the ones who requested an evidentiary hearing, presumably because they believed that the Court required more evidence than the documents cited in the government's filing. If the defendants had wanted to limit the

"evidentiary universe" to the sixteen exhibits in the government's filing, the government would have agreed to do that in March when it filed its motion. Instead, the defendants insisted on an evidentiary hearing. The defendants cannot have it both ways: they cannot insist that the government produce more evidence, while at the same time complain that the government has gone beyond the four corners of its initial filing.

Further, the government has provided more than enough explanation about what the exhibits are, and it has given defendants everything they need to prepare for the evidentiary hearing. The government intends to call one witness: FBI Special Agent Michael Heimbach, who is the case agent investigating Cornelius Garrison's murder. Recognizing the significance of the hearing, and as a professional courtesy, on November 21, 2025, the government made an early production of Agent Heimbach's Jencks Act materials, including numerous reports of interviews that were authored or reviewed by Agent Heimbach. The defendants have had these reports—including reports summarizing interviews of Ryan Harris and Jovanna Gardner—for two weeks, and they have had Garrison's reports since January 2025. The defendants complain that the government "intentionally ambushed" them by providing a list of 94 exhibits, when 31 were Garrison's reports they have had for almost a year, and seven were reports of Harris and Gardner that they have had for two weeks (and that largely overlap with the factual bases Harris signed in January 2025 and Gardner signed in June 2024). The government included these reports on its exhibit list merely so the Court could review them to prepare for the hearing—it assumed that the defendants had already read them and knew that they would play a role in Agent Heimbach's testimony.

The defendants also complain about the inclusion of exhibits related to an individual named "MK." MK is not a new addition to this case. They were explicitly referenced in the first

2

superseding indictment as "Individual 1," an individual whom Motta and Alfortish "conspired to manipulate . . . into making false statements about the staged collision scheme." Rec. Doc. 78, p. 17. The exhibits concerning MK/Individual 1 are recordings of meetings and conversations between MK and Motta. They are relevant to this hearing because, in them, MK repeatedly told Motta that a collision was staged, and Motta repeatedly attempted to coerce her to recant. This was part of a broader scheme by Motta and Alfortish to obstruct justice and tamper with witnesses—a scheme that included Motta and Alfortish's conduct with Garrison and that, ultimately, led to Garrison's murder.

Motta has had possession of these recordings of her conversations with MK for months, and she has known that allegations related to MK were part of the case against her since she was indicted. Motta's complaints that she is unprepared to address this evidence ring especially hollow because of her persistent objections to trial continuances. According to Motta, she was ready for trial as far back as March 2025, when she opposed a motion to continue the trial date and argued, "while there are some bank records that are at issue in this case, the reality is that the critical evidence in this case is witness testimony, which is not voluminous." Rec. Doc. 207, p. 2. The government reasonably assumed that, based on Motta's numerous representations that she was prepared for trial, she had reviewed this evidence against her.

The defendants also complain about "bank records and text messages from an individual by initials JB." Rec. Doc. 492, p. 2. These are two separate categories of items, and only one of them relates to JB. Certain of the bank records relate to a scheme by Alfortish to conceal assets from the federal investigation at the same he and Motta attempted to pay off Garrison and move him out of the country. As the government will explain at the evidentiary hearing, on December 9, 2019, Alfortish used Google to search "how far back can government go to take your money if

3

guilty of federal offense," "how far back can government go to obtain personal emails in a criminal investigation," and "how far back can the fbi obtain your personal emails." Alfortish then opened a bank account using fraudulent documents, and then he transferred the proceeds from his sale of the law office that he and Motta used when they were perpetrating the scheme into that new account. At the same time, as alleged in the second superseding indictment, Alfortish and Motta offered to pay Garrison and move him out of the country, and they conspired to prevent him from testifying in a deposition. *See* Rec. Doc. 256, p. 16. None of this is news to Alfortish's counsel, who had this scheme explained to him in detail at a reverse-proffer on October 8, 2025.

Other bank records relate to Parker's movement of funds around the time Garrison was murdered. These records and Agent Heimbach's conclusions from them—that Parker suspiciously withdrew all the money he had shortly before Garrison was killed so he could use the money to flee if necessary—were part of Agent Heimbach's testimony at Parker's detention hearing before Judge Van Meerveld in December 2024. *See* Rec. Doc. 118 (minutes of detention hearing).

As to "JB," they also are not a new individual in this case. Similar to MK, JB is explicitly referenced in the indictment as "Attorney C." JB was Motta's cocounsel on multiple collisions involving Garrison, Harris, and Harris's family members. The text messages between Motta and JB—produced to the defendants in April 2025—occurred from November 2018 to April 2019 and comprise eight total pages. In them, JB explained to Motta that, using records of Garrison's cell phone that were provided to Motta and JB by insurance defense attorneys, JB concluded that "Ryan Harris is a RED FLAG" and "[Garrison]'s fucked[.] Way too much out there on him." JB further informed Motta in January 2019 that a friend at an insurance defense firm "got a call

4

from the US attorney's office today regarding 'fraud' cases and Cornelius Garrison." In April 2019, as JB was withdrawing from cases with Motta, JB told Motta, "Vanessa, you seem to forget that we have spoken to Cornelius Garrison and he admitted to running cases for lawyers." Motta responded, "He may be running cases to lawyers but it's not meaning he planned them!! Big difference."

    These text messages between Motta and JB are relevant because they establish that, by at least April 2019, Motta was aware of the significant phone contacts between Garrison, Harris, and passengers in staged collisions, and she at least knew that Garrison was a runner. JB's concerns after reviewing Garrison's phone records were so great that they felt compelled to withdraw from cases with Motta. Despite this confrontation with JB, Motta continued litigating fraudulent lawsuits based on the staged collisions, and she failed to disclose any of this information, including to Bradley Egenberg, the attorney she attempted to use in early 2020 to obstruct Garrison's testimony in a deposition. As with the other evidence, the government reasonably assumed, based on Motta's frequent objections to trial continuances, that she had reviewed this evidence that has been in her possession for months.

    As to this and other evidence, the government has not hidden the ball. It has consistently explained to defense counsel the significance of the evidence and given detailed reverse-proffers, including on the exhibits the defendants complain about in their motion. It also bears mentioning that the government wasted substantial time preparing for testimony by Ryan Harris, whom Motta subpoenaed to rebut the "intentionally false or misleading" statement in Harris's factual basis that "Alfortish, Motta, and Parker commented to HARRIS that Garrison was a 'rat' and a 'snitch' and that it would be better if Garrison were dead." *See* Rec. Doc. 345 (opposition to government's motion to quash Harris's subpoena). At around 2:00 p.m. the day before the

hearing, the government learned from the United States Marshals (not Motta's counsel) that Motta had withdrawn the subpoena to Harris. The hours the government wasted preparing for Harris's testimony could have been spent finalizing the government's exhibit list and making an even earlier production. Indeed, the government considered not producing the exhibit list at all—there is no deadline in the scheduling order by which exhibits must be produced, and, as explained above, the government reasonably assumed that the defendants had reviewed the exhibits already, particularly the reports of Garrison, Harris, and Gardner. The defendants' complaints about the exhibits are meritless, and their motion should be denied.

## CONCLUSION

For the foregoing reasons, the government requests that the Court deny the Motion to Exclude Exhibits, or, Alternatively, Motion to Continue Hearing filed by defendants Sean D. Alfortish, Vanessa Motta, Motta Law, LLC, and Leon M. Parker. *See* Rec. Doc. 492.

    Respectfully submitted,

    MICHAEL M. SIMPSON
    ACTING UNITED STATES ATTORNEY

    */s/ J. Ryan McLaren*
    MATTHEW R. PAYNE
    BRIAN M. KLEBBA
    MARY KATHERINE KAUFMAN
    Assistant United States Attorneys
    J. RYAN McLAREN
    Trial Attorney

## CERTIFICATE OF SERVICE

I hereby certify that on December 4, 2025, I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

    */s/ J. Ryan McLaren*
    J. RYAN McLAREN
    Trial Attorney